IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| A.C., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Case No. 5:20-cv-00269-CHW |
| | : | |
| **COMMISSIONER OF** | : | Social Security Appeal |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## ORDER

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff's application for supplemental security income (SSI). The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals. For the reasons discussed below, the Commissioner's decision is **AFFIRMED**.

## BACKGROUND

Plaintiff applied for SSI benefits on October 31, 2018, alleging disability beginning in May 2018 due to Crohn's disease, urinary tract infection, irritable bowel syndrome, depression, and post-traumatic stress disorder. (R. 224, 226). After Plaintiff's application was denied initially and on reconsideration at the state agency level of review (Exs. 3B, 4B), Plaintiff requested further review before an administrative law judge (ALJ). The reviewing ALJ held a hearing February 5, 2020 (R. 32–56), and then issued an unfavorable opinion on March 25, 2020. (Ex. 5A). Plaintiff's request for review of that decision by the

1

Appeals Council was denied on May 20, 2020. (R. 1). The case is now ripe for judicial review. *See* 42 U.S.C. § 405(g).

Plaintiff filed the instant complaint on July 7, 2020 (Doc. 1), challenging the ALJ's consideration of the three-part pain standard as applied to Plaintiff's claims. (Doc. 17, p. 1). Specifically, Plaintiff complains that the ALJ "failed to effectively discuss or explain how [Plaintiff's] disability claims are unsupported by evidence … [or] to articulate specific reasons for discrediting [Plaintiff's] subjective reports and testimony" as to his irritable bowel syndrome and related pain. (*Id*. p. 9). Plaintiff did not raise any challenge to the ALJ's findings regarding Plaintiff's mental impairments.

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

The medical record in this case begins in March 2013 when Plaintiff, then 21 years-old, was taken to the Medical Center of Central Georgia's Emergency Room (ER) by his parents for a mental health evaluation. (R. 307). He received diagnoses of depression, suicidal risk, and schizophrenia, and was admitted to the recovery center. (R. 309). On March 28, 2013, Plaintiff was admitted to River Edge Behavioral Health (REBH) for residential treatment. (R 322). He remained at REBH until April 3, 2013. (R. 322).

In March 2014, Plaintiff's parents again took him to the ER after Plaintiff fell and passed out while intoxicated. (R. 311). Abrasions were found on Plaintiff's head (R. 312), but CT scans were normal. (R. 298, 300). Plaintiff expressed suicidal ideations. (R. 315). Plaintiff was cleared for psychiatric admission and referred for follow-up treatment with Dr. Osborn at REBH (R. 320). He was admitted to REBH from the hospital on March 29, 2014, and remained there until April 5, 2014. (R. 328).

Plaintiff received treatment through residential services at REBH in March and April 2013 and March and April 2014. (Ex. 2F). Each time, Plaintiff was treated for chief complaints of depression. (*Id.*) Episodic alcohol use was also noted. (*Id.*) Plaintiff was discharged each time with medications to treat his mental impairments. (*Id.*) Following his discharge for the 2014 admission, Plaintiff presented to REBH four times from April to June 2014 for follow-up treatment and medication management. (R. 360-375).

In May 2014, Plaintiff again sought care and was admitted to the Medical Center after having run toward a truck after drinking alcohol and experiencing suicidal ideations. (R. 288, 295). A history of depression and schizophrenia was noted (R. 292), as was his current treatment at REBH (R. 288). A CT scan revealed thickening of the colon wall but found no acute traumatic findings. (R. 295, 593). He was discharged the same day as the accident with medications to treat his mental impairment, as well as a stool softener and hydrocodone. (R. 608).

The following July, Plaintiff's parents brought him to the Medical Center ER for suicidal ideations without a specific plan. (R. 609). Abdominal pain was also noted upon intake. (R. 609). Plaintiff was discharged to REBH. (Exs. 3F, 4F). On July 21, 2014,

Plaintiff was again admitted to the REBH Crisis Stabilization Unit from the Medical Center ER due to suicidal ideations, and he was discharged approximately a week later, on July 27, 2014. (R. 491).

In September 2014 Plaintiff underwent a psychological evaluation with Dr. John Muller. (Ex. 5F). Dr. Miller diagnosed Plaintiff with post-traumatic stress disorder, major depressive disorder, and alcohol use disorder. (R. 586).

On May 15, 2018, Plaintiff visited the Coliseum Northside ER with complaints relating to irritable bowel syndrome and a urinary tract infection. (R. 751). A CT scan noted significant small bowel wall edema potentially related to inflammatory bowel disease, which was non-emergent. (R. 836). He was discharged with prescriptions for Zofran, Protonix, Bentyl, and Cipro to control his symptoms. (*Id.*) He was also discharged with instructions to receive further evaluation with his primary care physician. (R. 830).

On May 26, 2018, Plaintiff again presented to the Coliseum Northside ER with complaints of GERD and abdominal pain. (R. 762, 843). His previous treatment was noted. (R. 842). He was discharged the same day with medications to control his symptoms. (*Id.*)

Later, on May 26, 2018, Plaintiff visited the Medical Center ER, with complaints of a small bowel obstruction with nausea and a three-month history of abdominal pain. (R. 617). He reported seeking earlier treatment at Coliseum Northside and being discharged home. (*Id.*) He stated he never followed-up on past referrals to a gastroenterology specialist. (*Id.*) CT results showed thickening of the bowel wall and dilation of the bowel loops with a suggestion of a partial to complete small bowel obstruction. (R. 620). He was

prescribed several medications, including morphine for pain. (R. 618). Plaintiff signed out against medical advice the following day. (R. 622).

Plaintiff was admitted to Coliseum Hospital after visiting the ER for generalized, worsening abdominal pain on June 22, 2018. (Exs. 7F, 12F). One record notes that Plaintiff reported "excruciating abdominal pain." (R. 855). His patient history notes that he had been seen in the ER twice and was given a gastroenterologist referral but had not followed up. (R. 639). He also admitted to smoking cigarettes and marijuana but denied alcohol use. (R. 649). A CT scan showed progressing bowel wall thickening pointing to signs of possible inflammatory bowel disease or Crohn's disease. (R. 644, 739). Plaintiff was treated with antibiotics and referred for gastroenterological and surgical consults. (R. 645). No surgical interventions were a part of the admitting treatment plan, however. (R. 650, 653-655). During the initial surgical consult, Plaintiff denied any tobacco use. (R. 654).

Plaintiff underwent a colonoscopy on June 27, 2018 (R. 677, 727), which was suggestive of Crohn's disease. (R. 690). The physician, Dr. Stephanie Beavers, noted an abscess that could not be treated by interveinal radiology and recommended Plaintiff follow-up with a colorectal surgeon on an outpatient basis. (R. 690, 694*)*. A biopsy taken during the colonoscopy showed early inflammatory bowel disease. (R. 729). A follow-up CT scan on June 28, 2018, showed some edema improvement in the colon, but a new obstruction was noted when compared to a previous CT. (R. 736, 867, 996). Plaintiff's records indicate he often rated his pain at 8/10, but his pain subsided to as low as 0/10 or 1/10 with pain medication. *See, e.g.,* (R. 1035-1036, 1038-1040, 1043). Plaintiff

transitioned from IV to oral pain medications. (R. 700). By June 30, Plaintiff reported feeling better with controlled pain. (R. 669). Plaintiff was discharged July 1, 2018, with instructions to follow-up with a colorectal surgeon. (R. 745, 748, 856). Prior to discharge, Plaintiff noted no abdominal pain. (R. 860). In this hospital stay's records, Plaintiff reports using First Choice as his primary care facility. (R. 853).

On January 16, 2019, Plaintiff submitted to a clinical psychological evaluation with Dr. Larmia Robbins-Brinson in connection with his SSI application. (Ex. 9F). Plaintiff identified Crohn's disease flare-ups and major pain as reasons for the evaluation. (R. 770). He admitted he was not undergoing any psychological treatment at the time of the evaluation, nor had he treated since 2014. (*Id.*) He admitted to sometimes drinking and to smoking marijuana at least weekly. (R. 770-771). He reported no current stress events reflective of his past mental health diagnoses. (R. 771).

Plaintiff discussed his work history with Dr. Robbins-Brinson. He reported working as a dishwasher and bouncer at a bar, but he stopped working when he was asked to come in on his day off. (R. 771). He also worked at Taco Bell and CVS, explaining that he stopped working because the jobs were temporary. (*Id.*) He was found to be capable of going about his day without assistance with his personal care. (*Id.*) He discussed appetite concerns due to his Crohn's disease and expressed having sleep problems. (*Id.*) Plaintiff said he knows how to drive but had not taken the test to get a license. (*Id.*) Dr Robbins-Brinson noted that Plaintiff "allege[d] impairment due to poor psychological functioning," but also that "[h]e displayed a fair ability to function during the evaluation." (R. 772). Diagnoses of schizoaffective disorder, bipolar type, and cannabis use disorder were noted.

(*Id.*)  Dr. Robbin-Brinson's findings express concern that without treatment, Plaintiff's mental health recovery could be negatively impacted.  (R. 772-773).

February 12, 2019, Plaintiff visited the Coliseum ER citing abdominal pain.  (R. 1057).  He denied any recent doctor visits.  (R. 1058).  At the time, he was a daily smoker. (R. 1059). A CT scan noted Plaintiff was experiencing a Crohn's disease flare up and mild dilation and inflammation in the small bowel.  (R. 1067).  Nothing indicated to his treatment providers the need for further testing or a surgical consult.  (R. 1063).  He was discharged with instructions to pursue outpatient treatment with a primary care physician. (*Id.*)

Plaintiff again presented to Coliseum Northside ER on March 4, 2019, for abdominal pain and vomiting. (R. 789).  A physical examination revealed tenderness of the abdomen. (R. 791).  Plaintiff was found to have thickening of the small bowel, which had progressed since previous testing.  (R. 793).  The findings noted suspicions of Crohn's disease causing a small bowel obstruction. (*Id.*)  Plaintiff was admitted for further evaluation and for treatment with IV steroids and antibiotics.  (R. 794, 1074).  The next morning, Plaintiff reported no complaints of abdominal pain.  (R. 805).  On March 6, 2019, he was discharged home with the following medications: benedryl, Levaquin, flagyl, and prednisone. (R. 776, 812, 1074). Plaintiff was instructed to follow-up with his primary care physician and a gastroenterologist.  (R. 776, 1074).  The discharge notes state that his abdomen was soft and non-tender.  (R. 778).

In March 2019, Dr. Danielle Berry examined Plaintiff to provide information regarding a disability determination.  (Ex. 11F).  Prior to being called back for the exam,

8

Plaintiff fell asleep in the waiting area and had to be awakened. (R. 813). He had an odor of marijuana coming from his person. (*Id.*) However, Plaintiff was cooperative despite his continued drowsiness. (R. 814). Plaintiff reported being unable to do various activities, such as standing, sweeping, mopping, or cooking, for more than 5-15 minutes at a time. (R. 813). During the physical examination, Plaintiff had diffused abdominal tenderness (R. 814). Dr. Berry determined Plaintiff was able to perform standard physical functions with appropriate understanding. (R. 815).

The final medical treatment date from Plaintiff's records reflects a visit to the Coliseum ER on January 10, 2020, with complaints relating to his Crohn's disease. (R. 1122). Plaintiff reported that over-the-counter pain medicines failed to provide relief. (*Id.*) Another CT showed "findings consistent with active inflammatory bowel disease." (R. 1131). Plaintiff rated his pain level as 9/10. (R. 1135-1136). During this visit, he was treated with morphine (R. 1127) and discharged home with a prescription for Toradol to be taken as needed. (R. 1129).

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation procedure, the reviewing ALJ made the following findings in Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 31, 2018, his application date. (R. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: "schizophrenia with depression, personality, and post-traumatic stress disorders and inflammatory bowel disease." (R. 18). The ALJ found that Plaintiff's anemia, gastroesophageal reflux disease, and nephrosis were not severe impairments. (R 18-19).

9

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19). Therefore, the ALJ assessed Plaintiff's RFC, and found that Plaintiff could perform light work with the following exceptions:

> [The claimant] can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand/walk 4 hours and sit 6 hours, alternate sitting/standing for 5 minute duration at 30 minute intervals – this is an incidental posture shift that does not cause significant time off task. He can occasionally climb ramps, climb stairs, balance, stoop, crouch, crawl, or kneel. The claimant can never climb ladders, ropes, and scaffolds or have similar hazard exposure. He can frequently use his upper and lower extremities for such as pushing and pulling. The claimant can do simple routine tasks not at production rate pace of an assembly line and have occasional social interaction with the public and co-workers.

(R. 20).

At step five, the ALJ determined that Plaintiff was unable to perform any past relevant work. (R. 25). However, after hearing from a vocational expert and considering Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that claimant can perform." (R. 23, 26). Some of the available positions noted were merchandise marker, parking lot attendant, and electronics worker. (R. 26). Accordingly, based on this step five finding, the ALJ ruled that Plaintiff was not disabled within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff challenges the ALJ's analysis and application of the three-part pain standard as to his disability claims. (Doc. 17, pg. 6). Plaintiff argues that he meets the pain standard (Doc. 17, p. 8) and that the ALJ failed to appropriately consider and articulate reasons for discrediting Plaintiff's subjective reports and testimony regarding his pain. (Doc. 17, p. 9). Plaintiff further argues that substantial evidence does not support the ALJ's findings because "the medical evidence of record actually supports [Plaintiff's] testimony concerning the intensity, persistence, and limiting effects of his symptoms." (*Id.* p. 9-10). For the reasons discussed below, Plaintiff's argument does not give cause for a remand or any other requested relief.

When a claimant asserts disability through testimony of pain or other subjective symptoms, the Eleventh Circuit "requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If the objective medical evidence does not confirm the severity of the alleged symptoms, but indicates the claimant's impairment could reasonably be expected to produce some degree of pain and other symptoms, the ALJ evaluates the intensity and persistence of the claimant's symptoms and their effect on his ability to work by considering the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning functional limitations and restrictions

due to pain. *See* 20 C.F.R. § 404.1529. "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

Plaintiff argues that he met the pain standard and that substantial evidence does not support the ALJ's decision to discredit his subjective testimony as related to his pain. There is no dispute that the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms…." (R. 24, Doc. 17, p. 8, and Doc. 18, p. 5). In making this finding, the ALJ discussed and considered Plaintiff's hearing testimony, past work history, medical records, and reports from the doctors and professionals included in Plaintiff's file. The ALJ also determined, however, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 24).

In finding that Plaintiff's statements regarding his pain were inconsistent with the objective records, the ALJ discussed Plaintiff's complaints, the relevant medical record, and clinical evaluations. (R. 21-26). He did not discount the pain that Plaintiff experiences when he seeks treatment or that testing confirms Plaintiff's symptoms. (*Id.*). Plaintiff urges the Court to discount the ALJ's analysis by pointing to treatment dates and testing which the ALJ did not specifically mention in his decision. (Doc. p. 9). However, Plaintiff overlooks the ALJ's reference to nearly every medical record involving treatment for Plaintiff's abdominal pain, including Exhibit 12F, which was submitted after the hearing. The ALJ acknowledged Plaintiff's multiple visits to the ER and his CT scan findings

indicating a small bowel obstruction and irritable bowel disease (R. 21-22), but the ALJ also examined Plaintiff's medical history as whole and not in the vacuum of each individual visit.

Plaintiff argues that the ALJ's discussion of a lack of follow-up care also supports remand. (Doc 17, p. 9-10). Although Plaintiff's records reflect a history of sporadic ER visits and some admissions for his condition, the records also display a lack of after-care or ongoing treatment, which was just one of the considerations leading the ALJ to find Plaintiff's description of overall pain and condition as inconsistent. *See, e.g.,* (R. 24). As discussed by the ALJ, Plaintiff failed to follow-up with a primary care physician or gastroenterologist after receiving referrals or discharge instructions to do so. (R. 21-22). At another hospital visit, he left against medical advice. (R. 21). At the hearing, Plaintiff testified that he could not remember the last time he had visited his primary doctor. (R. 21). Plaintiff argues that the ALJ incorrectly found that Plaintiff "never followed through" on treatment such as a colonoscopy (Doc. 17, p. 9), but a reading of the decision and record shows the ALJ referenced an overall lack of follow-through on care and referrals following emergency room visits. In reviewing Plaintiff's sporadic treatment history, the ALJ noted that Plaintiff's "inflammatory bowel disease easily responds to treatment when he presents for medical care." (R. 24). The ALJ thus concluded that Plaintiff's failure to seek out "low cost care" for his conditions indicates that "his symptoms are not as severe or persistent as he alleges." (*Id.*). These conclusions are supported by substantial evidence in the record.

Plaintiff's failure to pursue follow-up care or consistent treatment was not the sole basis for the ALJ's decision. The ALJ also observed that Plaintiff had left previous

employment not because of physical or mental limitations, but because the business closed. (R. 18). Plaintiff stated to Dr. Robbins-Brinson that in 2017 he left a job as a dishwasher and bouncer after one year because, "They wanted me to come in on my day off but I said no." (R. 771). Plaintiff also worked at Taco Bell and at a CVS pharmacy, leaving those jobs because they were temporary positions. (*Id.*).

The ALJ further considered Plaintiff's interactions with the professionals to whom he was referred for evaluations. (R. 23-25).  Dr. Muller's 2014 evaluation focused more on Plaintiff's mental impairment and potential limitations, (Ex. 5F), but the ALJ found Dr. Muller's conclusions about Plaintiff's abilities consistent with more recent evaluations that also considered Plaintiff's physical complaints. (R. 23).  The ALJ considered the consultive physical exam of Dr. Berry, who noted that Plaintiff experienced some pain throughout her examination. (*Id.*)  In considering Dr. Berry's findings, the ALJ regarded her opinion as "partially persuasive…because she [gave] no specific vocational terms." (*Id.*) However, the ALJ found Dr. Berry's "examination…consistent with moderate physical restrictions within a light residual functional capacity." (*Id.*)  Next, the ALJ discussed the consultative psychological evaluation by Dr. Larmia Robbins-Brinson. (*Id.*)  Although this was a psychological evaluation, Dr. Robbins-Brinson observed some physical health attributes, such as Plaintiff holding his stomach throughout the appointment. (*Id.*)  Both evaluations led the ALJ to determine what limitations Plaintiff may experience in available employment based on what he was found to be able to accomplish. (R. 23-24). All the evaluations spoke to Plaintiff's daily habits and abilities, which the ALJ also considered in arriving at his decision.  Plaintiff's physical and mental limitations were accounted for in

the ALJ's ultimate decision and findings, as well as consideration of the vocational expert's testimony. (R. 25-27)

The ALJ thoroughly considered the record and articulated specific findings to support his decision as required. There is substantial evidence in the record, viewed as a whole, to support the ALJ's conclusion that Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms, but that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms were inconsistent with and exceeded the objective medical evidence.

## **CONCLUSION**

For the reasons discussed herein, the Commissioner's decision denying Plaintiff A.C.'s application for supplemental security income benefits is hereby **AFFIRMED**.

**SO ORDERED**, this 8th day of September, 2021.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge